IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


DARIUS WILSON,
        Petitioner,

vs.                                                        Case No.:  5:11cv133/RS/EMT

KENNETH S. TUCKER,
        Respondent.
_____/

## REPORT AND RECOMMENDATION

      This cause is before the court on Petitioner's petition for writ of habeas corpus filed under
28 U.S.C. § 2254 (doc. 1).  Respondent filed an answer and relevant portions of the state court
record (doc. 17).  Petitioner filed a reply (doc. 22).

      The case was referred to the undersigned for the issuance of all preliminary orders and any
recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2; *see
also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised
by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the
disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the
undersigned that the pleadings and attachments before the court show that Petitioner is not entitled
to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

      The relevant aspects of the procedural background of this case are established by the state
court record (*see* doc. 17).[1]  Petitioner was charged in the Circuit Court in and for Bay County,
Florida, Case Nos. 2004-CF-3073, 2004-CF-3074, and 2004-CF-3075, with one count of possession

---

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (doc.
17).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

with intent to sell or deliver of cocaine (Count I), one count of possession with intent to sell or deliver hydrocodone (Count II), one count of possession with intent to sell or deliver alprazolam (Count III), and one count of possession with intent to sell or deliver cannabis (Count IV) (Ex. A). Following a jury trial, he was found guilty as charged (Ex. G).  On June 16, 2006, Petitioner was sentenced to twelve (12) years of imprisonment on Count I, a concurrent term of twelve (12) years of imprisonment on Count II, and concurrent terms of five (5) years of imprisonment on Counts III and IV, to run concurrently with the sentence on Count I, with pre-sentence jail credit of 129 days (Exs. H, I).

Petitioner, through counsel, appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D07-1433 (Ex. J).  The First DCA affirmed the judgment per curiam without written opinion on May 13, 2008, with the mandate issuing July 8, 2008 (Ex. M). Wilson v. State, 983 So. 2d 1157 (Fla. 1st DCA 2008) (Table).  Petitioner did not seek further review.

On April 6, 2009, Petitioner filed a motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. P).  He subsequently supplemented the motion with additional argument (Ex. R).  The state circuit court issued an order denying three of Petitioner's claims and setting the remaining claim for an evidentiary hearing (Exs. T, U).  Following the evidentiary hearing, the court denied the remaining claim (Ex. V).  Petitioner appealed the decision to the First DCA, Case No. 1D09-6470 (Ex. W).  The First DCA affirmed the decision per curiam without written opinion on February 15, 2011, with the mandate issuing March 15, 2011 (Ex. X). Wilson v. State, 54 So. 3d 496 (Fla. 1st DCA 2011) (Table).

On March 21, 2011, Petitioner filed a second Rule 3.850 motion (Ex. Y at 1–22).  In an order rendered May 18, 2011, the state circuit court denied the motion as procedurally barred, because it was successive and untimely (*id.* at 43–44).  On April 18, 2011, Petitioner filed a petition for writ of habeas corpus in the state circuit court (Ex. Y at 23–31).  The state circuit court construed the motion as a Rule 3.850 motion and dismissed it as successive and untimely on June 1, 2011 (*id.* at 55–59).  Petitioner appealed the decisions to the First DCA, Case No. 1D11-2605 (*id.* at 126–27). He subsequently voluntarily dismissed the appeal (*see* Ex. Z).

Petitioner filed the instant federal habeas action on May 3, 2011 (doc. 1).  Respondent does not contest the timeliness of the petition (doc. 17 at 12).

II.     STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19. In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established

---

[2] Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

> Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."  Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'"  Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable."  Williams, 529 U.S. at 409.  Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it.  Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); cf. Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).  "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.'" Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting Williams, 529 U.S. at 411) (citing Harrington v. Richter, — U.S. —, 131 S. Ct. 770, 786–87 (Jan. 19, 2011)).  The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.  See Gill, supra at 1291 (citing Harrington, 131 S. Ct. at 786).  Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. See Harrington, 131 S. Ct. at 786; see also Gill, supra, at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the

petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); see e.g. Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").  The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. See Gill, 633 F.3d at 1292.  A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. Id.

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims.  See Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same).  The writ will not issue unless the petitioner shows

that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

Within this framework, the court will review Petitioner's claims.

III.    PETITIONER'S CLAIMS

Ground One:  "The trial court judge erred in not granting Mr. Wilson's motion to suppress."

In support of this claim, Petitioner asserts that three uniformed officers in three police cars responded to an anonymous call regarding a disturbance caused by a large party involving prostitution and narcotics (doc. 1 at 5).[3]  He asserts that upon the officers' arrival at the scene, the anonymous call turned out to be untrue (*id.*).  Petitioner states "not[hing] was going on," but the officers still restrained his liberty (*id.*).  Petitioner asserts he raised this claim in a pretrial motion to suppress, and appealed the trial court's denial of the motion on direct appeal (*id.*).

Respondent contends federal review of the suppression issue is unavailable, because Petitioner had a full and fair opportunity to litigate the Fourth Amendment claim in the state courts, pursuant to Stone v. Powell, 428 U.S. 465, 96 S. Ct. 3037, 49 L. Ed. 2d 1067 (1976) (doc. 17 at 17–18).  Respondent further contends notwithstanding the Powell preclusion, the motion to suppress was properly denied (*id.* at 18–19).

Federal courts are precluded from conducting post-conviction review of a petitioner's Fourth Amendment claim of an unconstitutional search or seizure if the state courts provided "an opportunity for full and fair litigation" of that claim.  *See* Powell, 428 U.S. at 494; *see also* Bradley v. Nagle, 212 F.3d 559, 564 (11th Cir. 2000); Huynh v. King, 95 F.3d 1052, 1058 (11th Cir. 1996).  This bar applies if the State has provided an opportunity for full and fair litigation of the claim "whether or not the defendant employs those processes."  Huynh, 95 F.3d at 1058 (citing Caver v. Alabama, 577 F.2d 1188, 1192 (5th Cir. 1978)).[4]  "In [Powell], the Court reasoned that, so long as a defendant had the opportunity to present his Fourth Amendment claims to the state trial and

---

[3] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned.

[4] In Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981.

appellate courts, the objectives of the exclusionary rule have been satisfied." Bradley, 212 F.3d at 564–65. For a claim to be fully and fairly considered by the state courts, where there are facts in dispute, full and fair consideration requires "consideration by the fact-finding court, and at least the availability of meaningful appellate review by a higher state court." Mincey v. Head, 206 F.3d 1106, 1126 (11th Cir. 2000) (quoting Tukes v. Dugger, 911 F.2d 508, 513–14 (11th Cir. 1990)); Caver, 577 F. at 1192 ("'[F]ull and fair consideration' of a fourth amendment claim [includes] at least one evidentiary hearing in a trial court and the availability of meaningful appellate review when there are facts in dispute, and full consideration by an appellate court when the facts are not in dispute."); see also Powell, 428 U.S. at 494 n.36.[5] Furthermore, even if a state court erred in its Fourth Amendment analysis, a federal court will not consider the merits of a Fourth Amendment claim. See Swicegood v. State of Alabama, 577 F.2d 1322, 1324 (5th Cir. 1978).

In the present habeas petition, Petitioner does not allege he was not provided an opportunity to present facts to the trial court. In fact, the record demonstrates he was given a full and fair opportunity to do so. The trial court gave Petitioner an evidentiary hearing on the issue raised in the instant petition and the motion to suppress, that is, whether the officers were legally on a third party's (Mr. Kittrell's) driveway when they observed contraband in the vehicle in which Petitioner was sitting and then ordered Petitioner out of the vehicle, seized the contraband, arrested Petitioner, searched his person, and conducted an additional search of the vehicle and seizure of contraband found therein (see Exs. B, C). The factual issues were fully developed at the suppression hearing (Ex. C). Mr. Kittrell, Officer David Thomassee, and Petitioner testified at the hearing (id.). The trial court heard arguments by counsel (id.). In a written order denying the motion to suppress, the trial court made explicit findings of fact on matters essential to the suppression issue, parsing the evidence and arguments presented by both parties. The court's factual findings are adequately supported by the record. Petitioner fully briefed this issue on appeal to the First DCA, and the

---

[5] The Supreme Court, in a footnote in its Powell decision, cited its earlier decision in Townsend v. Sain to elaborate on the meaning of the phrase "full and fair litigation." See Townsend v. Sain, 372 U.S. 293, 83 S. Ct. 745, 9 L. Ed. 2d 770 (1963), overruled in part, Keeney v. Tamayo-Reyes, 504 U.S. 1, 5, 112 S. Ct. 1715, 1717, 118 L. Ed. 2d 318 (1992). Townsend lays out certain factors for a court to consider in resolving whether an issue has been fully and fairly litigated. Among these factors are whether there was a hearing procedure available, how well the factual issues were developed, and whether the trial court's fact-findings are adequately supported by the record. See Townsend, 372 U.S. at 312–13.

appellate court affirmed (Exs. J, M).  In light of the trial court's careful consideration and explicit findings on the Fourth Amendment issue and the appellate court's review of the Fourth Amendment issue, the undersigned concludes Petitioner was afforded a full and fair opportunity to litigate his Fourth Amendment claim, in satisfaction of <u>Powell</u>.  Therefore, federal habeas review of Petitioner's Fourth Amendment claim is unavailable.

      B.     <u>Ground Two:  "Counsel was ineffective for not re-requesting [sic] the special jury instruction."</u>

Petitioner asserts defense counsel requested a special jury instruction on the affirmative defense of lack of knowledge of the illicit nature of the controlled substances found in the vehicle (doc. 1 at 5).  Petitioner states the trial court denied the requested instruction but advised counsel that the issue could be revisited if counsel wished to raise it again at the close of evidence (*id.*). Petitioner asserts counsel never renewed his request for the instruction (*id.*).

Respondent concedes Petitioner exhausted this claim in the state courts (doc. 17 at 20). Respondent contends the state court's adjudication of the claim was not contrary to or an unreasonable application of clearly established federal law (*id.* at 20–23).

      1.     Clearly Established Federal Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  To obtain relief under <u>Strickland</u>, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  *Id.* at 687–88.  If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief. *Id.* at 697.

"The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one." <u>Jones v. Campbell</u>, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing <u>Chandler v. United States</u>, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)).  The focus of inquiry under the performance prong is "reasonableness under prevailing professional norms." <u>Strickland</u>, 466 U.S. at 688–89.  "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from

counsel's perspective at the time." *Id.* at 689.  If the record is not complete regarding counsel's actions, "then the courts should presume 'that what the particular defense lawyer did at trial—for example, what witnesses he presented or did not present—were acts that some lawyer might do." Jones, 436 F.3d at 1293 (citing Chandler, 218 F.3d at 1314–15 n.15).  Furthermore, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so."  Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994).  Counsel's performance is deficient only if it is "outside the wide range of professional competence."  Jones, 436 F.3d at 1293 (citing Strickland, 466 U.S. at 690); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").  "[T]here are no 'absolute rules' dictating what reasonable performance is . . . ."  Michael v. Crosby, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting Chandler, 218 F.3d at 1317).  Indeed, "'[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions.'"  *Id.* (quoting Putman v. Head, 268 F.3d 1223, 1244 (11th Cir. 2001)).

As to the prejudice prong of the Strickland standard, Petitioner's burden of demonstrating prejudice is high.  *See* Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002).  The Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'"  *Id.* (quoting Strickland, 466 U.S. at 693).  However, the Court has also clarified that a petitioner need not demonstrate it "more likely than not, or prove by a preponderance of evidence," that counsel's errors affected the outcome.  Strickland, 466 U.S. at 693–94.  Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 694.  Indeed, it would be "contrary to" the law clearly established in Strickland for a state court to reject an ineffectiveness claim for failing to prove prejudice by a preponderance of the evidence.  Williams v. Taylor, 529 U.S. at 405–06.

The prejudice assessment does "not depend on the idiosyncracies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law. Strickland, 466 U.S. at 694–95. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. Further, when the claimed error of counsel occurred at the guilt stage of trial (instead of on appeal), Strickland prejudice is gauged against the outcome of the trial, not on appeal. *See* Purvis v. Crosby, 451 F.3d 734, 739 (11th Cir. 2006) (citing Strickland, 466 U.S. at 694–95).

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. Strickland, 466 U.S. at 698; Collier v. Turpin, 177 F.3d 1184, 1197 (11th Cir. 1999).

2.      Federal Review of State Court Decision

Petitioner raised this claim as Ground One in his Rule 3.850 motion (Ex. P). In the state circuit court's written decision denying the claim, the court correctly cited the Strickland standard as the applicable legal standard (Ex. T at 655). The court adjudicated the claim as follows:

> In claim one, Defendant alleges counsel was ineffective for failing to renew his request for a special jury instruction on the Defendant's knowledge. Defendant claims that when counsel first requested the instruction, the Court found that there was insufficient evidence upon which to give it, but stated that it would revisit the issue if further evidence came to light that supported the instruction.
>
> The record reflects that Defendant's counsel requested the following special jury instruction:
>
> > An issue in this case is whether the defendant had knowledge of the nature of the drugs found in the vehicle in which he was sitting.
> >
> > You are hereby instructed that it is a defense to the offenses with which Darius Wilson is charged if he did not have knowledge of the illicit nature of the controlled substances located in the vehicle.
>
> *See* attached Defendant's Proposed Special Jury Instruction No. 2. The Court denied the request, and noted that if the facts changed between that time and the time to

instruct the jury, they could readdress the issue.  *See* attached Trial Transcript excerpt at pp. 209–210.

      The Defendant claims in his motion that, after he took the stand and testified that he did not know there were any drugs in the car, counsel should have re-requested the instruction.  *See* attached Trial Transcript excerpt at pp. 214–216.  The Defendant did not testify that he knew the drugs were there but he did not know the illicit nature of the drugs.  He simply testified that he did not know anything was in the car at all.  As a result, nothing had changed since the Court's prior ruling denying the instruction, and it would have been futile to re-request the instruction.  Counsel is not ineffective for failing to raise a nonmeritorious claim.  <u>See</u> *Johnson v. State*, 921 So. 2d 490 (Fla. 2005).  Thus, Defendant has not shown deficient performance or prejudice as set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

(Ex. T a 654–55).

Petitioner raised this issue in his initial brief on appeal of the circuit court's denial of his Rule 3.850 motion (Ex. W).  The First DCA affirmed the lower court's decision without written opinion (Ex. X).

The state court's findings of fact are supported by the record.  Defense counsel requested a special instruction stating:

      An issue in this case is whether the defendant had knowledge of the nature of the drugs found in the vehicle in which he was sitting.

      You are hereby instructed that it is a defense to the offenses with which Darius Wilson is charged if he did not have knowledge of the illicit nature of the controlled substances located in the vehicle.

(Ex. F).  During the charge conference after the State rested its case, the trial court denied defense counsel's request on the ground that at that point in trial, there had been no evidence that Petitioner did not know of the illicit nature of the substances found in his vehicle (Ex. G at 209).  The court stated that if, at the close of all the evidence, counsel wished to renew his request, the court would revisit the issue (*id.* at 210).

The defense presented Petitioner's testimony (Ex. G at 211–23).  Petitioner testified he was at William Kittrell's house to look at a truck Kittrell was selling, and a couple who had rented a car asked Petitioner if he wanted to use the car for the night (*id.* at 212, 218–19).  He testified he accepted their offer and paid them $40.00 to use it (*id.*).  Petitioner testified he sat down in the

driver's seat, and within one or two minutes, the police were "right there in my face." (*id.* at 214).
He testified he was wearing prescription sunglasses and did not see the drugs in the car, nor did he
know that drugs were present in the vehicle (*id.* at 214–16, 220).

As found by the state court, Petitioner did not testify that he knew the drugs were there but
did not know the illicit nature of the drugs; rather, he simply testified he did not know the drugs
were in the car at all.  In the absence of testimony that Petitioner knew of the presence of the drugs
but did not know their illicit nature, Petitioner failed to demonstrate counsel had a reasonable basis
for renewing his request for the special jury instruction.[6]  In the absence of a reasonable basis for
counsel to renew the request, Petitioner failed to show counsel performed deficiently, or that there
was a reasonable probability of a different outcome if counsel had renewed his request for the
special instruction.

Petitioner failed to demonstrate that the state court's adjudication of his claim was based
upon an unreasonable determination of the facts, or contrary to or an unreasonable application of
Strickland.  Therefore, he is not entitled to federal habeas relief on Ground Two.

C.      Ground Three:  "Counsel was ineffective for not calling witness during the
suppression hearing when the Defendant proffers the witness [sic]."

Petitioner contends defense counsel performed ineffectively by failing to call Sergeant Barry
Roberts as a witness at the suppression hearing (doc. 1 at 6).  Petitioner asserts Sergeant Roberts's
testimony would have "negated the adverse effects" of the testimony of Officer Thomassee (*id.*).
He contends there is a probability the motion to suppress would have been granted if counsel had
presented Sergeant Roberts's testimony (*id.*).

Respondent concedes Petitioner exhausted this claim (doc. 17 at 23–24).  Respondent
contends the state court's adjudication of the claim was not contrary to or an unreasonable
application of clearly established federal law (*id.* at 24–26).

1.      Clearly Established Federal Law

The Strickland standard, set forth *supra*, governs this claim.

2.      Federal Review of State Court Decision

---

[6] The jury was instructed on the elements of each crime, including that the State was required to prove beyond
a reasonable doubt that Petitioner had knowledge of the presence of the substances (Ex. G at 261–71).

Petitioner raised this claim as Ground Two in his Rule 3.850 motion (Ex. P).  The state circuit court adjudicated the claim as follows:

> In claim two, Defendant alleges counsel was ineffective for failing to call Sgt. Barry Roberts to testify at the pretrial suppression hearing.  Defendant submits that Officer David Thomassee testified that the dome light in the car was on, and that was how he was able to see the drugs in the car.  However, Defendant asserts that, in his deposition, Sgt. Roberts testified that the inside of the car was illuminated by the officers' flashlights.  Thus, Defendant claims that Sgt. Roberts' testimony would have "negated the averse effects" of Officer Thomassee's testimony, and that there is a reasonable probability that his motion to suppress would have been granted if Sgt. Roberts had testified.

> The record reflects that Sgt. Roberts did not testify at the hearing, but counsel provided the Court with his deposition transcript and asked the Court to consider it.  *See* attached Suppress[ion] Hearing Transcript excerpt at pp. 65, 68.  No matter how the vehicle was illuminated, the officers were able to see drugs in plain view.  Thus, the difference in these officers' versions of the events was not material to the ruling.  The use of a flashlight to illuminate an area does not violate any constitutional principles and merely enhances an officer's plain view.  *See e.g. State v. Hite*, 642 So. 2d 55 (Fla. 2nd DCA 1994); *State v. Elbertson*, 340 So. 2d 1250 (Fla. 3d DCA 1976); *Texas v. Brown*, 460 U.S. 730, 739–40 (1983).  Therefore, Defendant has not shown deficient performance or prejudice on the part of counsel.  *See Strickland*.

(Ex. T at 655).

Petitioner raised this issue in his initial brief on appeal of the circuit court's denial of his Rule 3.850 motion (Ex. W).  The First DCA affirmed the lower court's decision without written opinion (Ex. X).

Initially, the record supports the state court's finding that during the suppression hearing, defense counsel asked the trial court to consider the deposition testimony of Sergeant Roberts (Ex. C at 681, 684).  Additionally, as the state court correctly determined, even if Officer Thomassee's view of the inside of the car was illuminated with a flashlight instead of the dome light, this fact would not have changed the trial court's determination that the contraband observed by Thomassee was in his "plain view" for purposes of the Fourth Amendment, and thus provided a legal basis for the officers to order Petitioner out of the car, arrest him, and search him and the vehicle.  *See* Texas v. Brown, 460 U.S. at 839–40 (under "plain view" doctrine, officer's action in shining flashlight to illuminate interior of car did not violate driver's Fourth Amendment right).  Therefore, Petitioner

failed to show a reasonable probability the trial court would have granted the motion to suppress if defense counsel had presented Sergeant Roberts's testimony.  Petitioner's having failed to satisfy the prejudice prong of the <u>Strickland</u> standard, he failed to demonstrate that the state court's adjudication of the claim was unreasonable.

  D. <u>Ground Four:  "Counsel was ineffective for not calling witness who was available and willing to testify on Defendant's behalf."</u>

  Petitioner asserts that during trial, defense counsel advised the court that he wished to call a witness that was very important to the defense but had not been disclosed in discovery, but the trial court refused to permit her testimony due to counsel's failure to disclose her (doc. 1 at 6).  Petitioner states he had previously informed defense counsel of the witness's whereabouts, her willingness to testify, and the substance of her proposed testimony (*id.*).  He contends the result of his trial would have been different if counsel had disclosed her and called her to testify (*id.*).

  Respondent concedes Petitioner exhausted this claim (doc. 17 at 27).  Respondent contends the state court's adjudication of the claim was not contrary to or an unreasonable application of clearly established federal law (*id.* at 27–30).

  1. Clearly Established Federal Law

  The <u>Strickland</u> standard, set forth *supra*, governs this claim.

  2. Federal Review of State Court Decision

  Petitioner raised this claim as Ground Three in his Rule 3.850 motion (Exs. P, R).  The state circuit court adjudicated the claim as follows:

> In ground three, the defendant alleges trial counsel, Thomas Cassidy, was ineffective for failing to call Lakeisha Williams to testify at trial after the defendant had told trial counsel prior to trial about Ms. Williams being a witness to a rental agreement involving the car in which the drugs and the defendant were found at the time of the arrest.  At the evidentiary hearing the defendant testified he never saw a witness list and did not know that his girlfriend, Lakesha [sic] Williams, was not listed as a witness until the day of trial.  He had assumed she was going to testify as to the rental agreement between the defendant and an unknown third party immediately prior to his being found in the car and, because she was not allowed to testify, he had to testify in order to present this evidence to the jury.  However, the defendant did admit on cross examination during the evidentiary hearing that he had never told his trial attorney exactly how Ms. Williams was involved in the case.  Mr. Cassidy testified at the evidentiary hearing that he and the defendant had discussed the issue

of the car's ownership during one of their meetings.  Mr. Cassidy was aware that the car was, in fact, leased from Hertz but did not know who was listed as the renter of the vehicle.  Mr. Cassidy utilized the fact that law enforcement failed to identify the leesor [sic] of the vehicle as part of his defense strategy of an incomplete police investigation into the case and a failure of the State to prove their case against the defendant.  Mr. Cassidy also presented at trial the testimony of William Kittrell who testified about what took place concerning the car and the defendant's involvement prior to the arrival of the police.  Mr. Kittrell mentioned that the defendant said something about somebody wanting to rent it to him and the Court overruled the State's hearsay objection.  See Vol. VIII, trail transcript, May 3, 2006, page 151, lines 18–25 and page 153, lines 1–4, record on appeal.  However, Mr. Cassidy also testified at the evidentiary hearing that although Ms. Williams had been actively involved in preparing the defense of the defendant, and had been in his office with the defendant on several occasions, neither she nor the defendant advised him prior to the day of trial that she was privy to a telephone conversation a short time before the police arrived concerning a rental agreement for the car between the defendant and a third party.  Indeed, Mr. Cassidy testified she disclosed this information to him in the courthouse parking lot during the lunch recess on the day of trial.  The transcript also reflects that Mr. Cassidy promptly disclosed to the Court and the State the existence of this witness and asked the Court to allow her to testify.  See Vol. VIII, trial transcript, May 3, 2006, pages 59–66, record on appeal.  This record is consistent with Mr. Cassidy's evidentiary testimony that he had just learned of the nature of Ms. Williams' testimony on the day of trial.  Indeed, during the proffer of Ms. Williams' testimony on the day of trial Mr. Cassidy asked Ms. Williams the following questions and she gave the following answers:

> Q:  Did you talk to me in the parking lot at lunch time?
>
> A:  Yes, sir.
>
> Q:  Did you explain all this to me?
>
> A.  Yes.

See:  Vol. VIII, trial transcript, May 3, 2006, page 147, lines 24–25 and page 148, lines 1–3, record on appeal.

This is also consistent with Mr. Cassidy's testimony as to how he came up with this "new" information.  Mr. Cassidy cannot be ineffective because he "should have known" that Ms. Williams would be a witness when neither the defendant nor Ms. Williams told him of her possible involvement until the very last moment during the beginning of the trial and after jury selection.  Mr. Cassidy acted properly in

immediately bringing this matter to the attention of the Court and seeking to have the testimony allowed.  He cannot be ineffective because the Court denied his request.

The defendant has therefore failed to establish that his counsel was ineffective and his motion should be denied as to ground three.  See *Strickland v. Washington, 466 U.S. 668 (1984).*

(Ex. V).

Petitioner raised this issue in his initial brief on appeal of the circuit court's denial of his Rule 3.850 motion (Ex. W).  The First DCA affirmed the lower court's decision without written opinion (Ex. X).

During the postconviction evidentiary hearing, Petitioner testified as follows with regard to the information he provided defense counsel about Ms. Williams as a potential witness:

Q.  And, Mr. Wilson, do you remember specifically what you told him [Mr. Cassidy] regarding Lakeshia [sic] Williams?

A.  Well, I told him that—I just basically told him that these were going to be the witnesses I was going to use at trial, and that's all basically I really told, I think I remember, all I told him.

Q.  Okay.  You don't remember telling him specifically why Lakeshia [sic] Williams would be important?

A.  No, ma'am, I don't.  I don't remember exactly telling him everything that she knowed [sic].
. . . .
A.  I just told him that she was going to be a witness for me.

(Ex. U at 695–97, *see also id.* at 708–09).  Petitioner testified he and Mr. Cassidy discussed his defense strategy, that is, they would first pursue suppression of the drugs found in the car, and if that was unsuccessful, they would proceed with the defense that he did not have possession or knowledge of the controlled substances in the vehicle (*id.* at 697–98, 715–21).  Petitioner testified:

A.  . . . I told him [Mr. Cassidy] everything that happened.  I told him that, you know, I was going to buy a truck but I ended up renting a vehicle from another person that was, a female [who] was over there [at Mr. Kittrell's house].  And basically that's all I told him.

Q.  . . . did you know the female's name?

> A.  I didn't know here name.  She told me what her name was, but I didn't, it didn't really click in my mind right off the bat.
>
> Q.  . . . And Lakeshia [sic] Williams was important to the rental agreement how?
>
> A.  Yes, because—well she, I was on a cell phone talking to the lady about the rental agreement and she was on the phone with me and she overheard her talking to me about the rental agreement and she overheard her saying what her name was and she said she heard her say what her name was, you know, so she know [sic] what her name was.  I didn't actually, it didn't actually click into me what it was.  But I think that what she said her name was, what she said it was, what my baby's mother [Ms. Williams] said it was, that's what she said her name was.

(*id.* at 697–98).  He testified he brought Ms. Williams with him to only one meeting with Mr. Cassidy (*id.* at 721).  Petitioner testified he would not have testified at trial if defense counsel had called Lakeisha Williams to testify that the car did not belong to him, and he rented it from a woman at Mr. Kittrell's house (*id.* at 698–99, 711–21).

Mr. Cassidy testified he began his legal career as a prosecutor in 1981 and had been practicing criminal defense since 1992 (fourteen years prior to Petitioner's trial) (Ex. U at 725–28).  Mr. Cassidy testified he had face-to-face meetings with Petitioner on November 8, 2004, April 17, 2005, August 9, 2005, November 17, 2005, and then two or three times between the date of the suppression hearing, April 26, 2006, and trial, May 3, 2006 (*id.* at 731–53).  Mr. Cassidy testified at the first meeting, in November of 2004, Petitioner provided Mr. Kittrell's name as a witness, so he listed Mr. Kittrell in his initial discovery disclosure (*id.* at 733).  Cassidy testified that Mr. Kittrell was present at the April of 2005 meeting, and he (Cassidy) made it clear to Petitioner and Mr. Kittrell that he needed names and addresses of all witnesses who were involved in or had information about the case (*id.* at 735–38).  Cassidy testified Petitioner and Mr. Kittrell provided names of three additional witnesses, Ginny Kelly, Paul Jimmerson, and Denny Proctor, all of whom he listed as witnesses in a supplemental discovery disclosure (*id.* at 738–39).  Mr. Cassidy testified that Petitioner did not indicate that Ms. Williams was a witness (*id.* at 739–40).  Cassidy testified that Lakeisha Williams had been to his office a number of times to drop off payments or for other reasons, but neither she nor Petitioner ever mentioned that she was a potential witness (*id.* at 740).  He testified if Ms. Williams had been mentioned as a potential witness, he would have listed her in

a discovery disclosure (*id.* at 740–41).  Mr. Cassidy testified that at his meeting with Petitioner in August of 2005, Petitioner again did not mention Ms. Williams as a potential witness (*id.* at 741–42).  Cassidy further testified that Petitioner, Mr. Kittrell, and Ms. Williams were present during the November 17, 2005, meeting, which he described as a "dress rehearsal" for the suppression hearing (*id.* at 743–44).  Cassidy stated they discussed the suppression issue as well as issues related to an eventual trial if the suppression motion was denied (*id.* at 744).  Mr. Cassidy testified that during the meeting, Ms. Williams never indicated she had information helpful to the defense (*id.* at 744, 746–47).  Cassidy testified:

> A. . . . She [Ms. Williams] knew we were having an issue about ownership of that car.  She never said a word.  Mr. Kittrell never said a word, and Mr. Wilson [Petitioner] never said a word about where Ms. Williams would fit in the knowledge spectrum about the car that Mr. Wilson was sitting in at the time Springfield police arrived.
>
> Q.  In other words, no one, Mrs. Wilson (sic) including, and most definitely Mr. Williams [sic] never mentioned to you that she had any knowledge that would be relevant to this particular case and that she needed to be listed as a witness?
>
> A.  That is correct.  That's correct.

(*id.* at 747–48).  Mr. Cassidy testified that at one point during the November 2005 meeting, Ms. Williams left the room, because the baby she brought with her became fidgety, and during that time, Petitioner told him that his position regarding the car was that he and Mr. Kittrell walked out of Kittrell's house, Petitioner saw the car sitting in the driveway, he got into the car to see whose car it was, and the police arrived (*id.* at 776).  Cassidy testified:

> From that point in November forward, I was continuously of the impression and as an established fact that those were the facts, that he did not know how that car got in that driveway, he didn't know whose car it was and he was merely checking it out and, lo and behold, the police arrived while he was in . . . the driver's seat of the vehicle . . . . So, no there was no line of investigation for me to be doing about a rental agreement, because that was what he had told me had happened.

(*id.* at 777).[7]

---

[7] Just five (5) days prior to jury selection, Petitioner mentioned the car rental theory during the prosecutor's cross-examination of him at the suppression hearing (Ex. C).  Petitioner testified at the suppression hearing that the car belonged to someone at Mr. Kittrell's house who was "renting [it] out" (*id.* at 671).  Petitioner initially wavered in his

Mr. Cassidy testified he first learned that Ms. Williams may have potentially exculpatory information during the lunch break of the second day of trial (the first day of testimony), when Ms. Williams approached him in the courthouse parking lot and asked his opinion of how the trial was going (Ex. U at 755–56, 761).    He testified he told Ms. Williams he was concerned, because Petitioner had just come up with the notion of a rental agreement, and Ms. Williams responded, "Oh, I know about that rental, I know about that agreement; I was on the phone with him" (*id.* at 778). Mr. Cassidy testified he was concerned that the new evidence was either "too little, too late" or fabricated, since it had never been mentioned in his previous discussions with Petitioner (*id.* at 762). He testified he discussed the development with Petitioner, and Petitioner stated he definitely wanted Cassidy to call Ms. Williams as a witness (*id.* at 761–62).  Cassidy testified this was the first time he ever knew that Petitioner wanted her to testify (*id.*).  Mr. Cassidy testified he wanted to put the new information on the record and preserve Ms. Williams's testimony, so he filed an amended witness list and advised the prosecutor of the development (*id.* at 756–57, 761–63).  He testified there were evidentiary problems with Ms. Williams's testimony, because it was hearsay—she would have testified she overheard a woman named "Becka" offer Petitioner the use of her car if he paid her, and then Petitioner said to Ms. Williams, "I got us a ride" (*id.* at 766–68; Ex. G at 143–47).  Mr. Cassidy proffered Ms. Williams's testimony to the court, but the court did not allow her to testify (Ex. U at 757, 762–63; *see also* Ex. G at 140–48).  Mr. Cassidy testified that during all of his discussions with Petitioner, Petitioner never mentioned Ms. Williams as a potential witness (Ex. U at 753, 755–56).

Mr. Cassidy also testified regarding his concern that both prior to trial and prior to the postconviction evidentiary hearing, Petitioner was essentially asking him to perpetrate a fraud on the court (Ex. U at 758–59).  He testified that prior to the evidentiary hearing, he received a letter form Petitioner, which he described as follows:

> His opening paragraph, sentence is letting me, he wants to let me know what his 3.850 claim is all about.  Those are my terms, not his.  But the reason why he

---

testimony as to whether he had actually rented it when he sat in it just prior to the police arriving at the house, but he eventually testified he had actually rented it when the police arrived (*id.* at 671–72).  Petitioner testified he rented it from "a white couple," but he never learned their names (*id.* at 672–73).  Petitioner never mentioned that Ms. Williams had knowledge of the rental.

wants me to know this is, quote, "so hopefully you would help me get out of this situation that I am in."  Then he goes into this is what my claim is about and he goes into the rest of that page, a whole second page, pretty much a whole third page.  And then on the bottom of the third page appears to be a bit of a summation, when he advises me that of his claims only one has come forward, that being the timing of the disclosure of Lakeshia [sic] Williams to me.  He puts in, "this is just a reminder of me advising you to remember when I told you of this said witness that I need to testify at trial."  And he puts, "prior to me advising counsel of other witnesses."  I found that kind of disturbing because it appeared to me that Mr. Wilson is asking me to help him through this right now and it's consistent with a concern that started developing prior to the trial as well.  I was very concerned about my role as an officer of the court and I sensed that I was being asked to, in essence, perpetrate a fraud on the court, and I didn't want to do anything there.  I know he wanted Ms. Williams to testify, but I also know that barely five or six months earlier he told me, in that November dress rehearsal, which is why I abandoned that line of where I was going, that he had no idea whose car it was, he had just got into that car because he came out of Kittrell's house, saw the car sitting there in the driveway and he wanted to know whose car it was, which is completely inconsistent with what Mrs. Williams wanted me to get her to testify to.  He also told me, I believe during that same meeting, it was during that same meeting, that while he was in that car trying to figure out who owned the car, whose car it was, why it was there, that he found a cigar box and that because the police were now walking up behind him in the driveway, from the street toward the house, that he relocated that cigar box to a place where it would hopefully not be visible.  And my concern there and I expressed to Mr. Wilson is it didn't really matter if the car was being driven or not at the time.  It didn't really matter if the car was in his name or not at the time.  Also, a review of the police records indicate that the car was rented from Hertz.  It really didn't matter if he was the one who rented the car from Hertz or not.  The point was, under the constructive possession law, especially when he is the only one in the car, he has to have knowledge that there is contraband and the ability to control that.  And he did all of that when he was concerned about police walking up the driveway and placing that cigar box perhaps in a place where it wouldn't been [sic] seen under the car seat.  Now, that did not negate my other concerns about the police not having probable cause to do the search, but . . . I was concerned about going down this rental agreement line that he wanted his baby's mother to come in and testify about.

(Ex. U at 759–60).

Petitioner has failed to provide clear and convincing evidence to rebut the state court's factual finding that neither he nor Ms. Williams told Mr. Cassidy of Ms. Williams's possible involvement in the events on the night of Petitioner's arrest until the very last moment during the beginning of the trial and after jury selection.  In light of this finding, Petitioner failed to

demonstrate that Mr. Cassidy's failure to investigate Ms. Williams and timely disclose her as a defense witness was unreasonable.  Accordingly, the state court's denial of this claim was not unreasonable.

## IV.   CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.      That the petition for writ of habeas corpus (doc. 1) be **DENIED**.

2.      That a certificate of appealability be **DENIED**.


At Pensacola, Florida, this 2nd day of July 2012.


/s/ Elizabeth M. Timothy
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).